1    KAREN P. HEWITT
       United States Attorney
2    CAROLINE P. HAN
       Assistant U.S. Attorney
3    California State Bar No. 250301
       United States Attorney's Office
4    880 Front Street, Room 6293
       San Diego, California 92101-8893
5    Phone: (619) 557-5220
       Fax: (619) 235-2757
6    E-mail: caroline.han@usdoj.gov

7    Attorneys for Plaintiff
       United States of America

8

9                  UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR2040-W |
| | ) | |
| Plaintiff, | ) | **RESPONSE AND OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTIONS:** |
| v. | ) | |
| | ) | **(1) TO COMPEL SPECIFIC DISCOVERY** |
| JOHN MICHAEL VREELAND, | ) | **(2) FOR LEAVE TO FILE FURTHER MOTIONS** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | Date:    August 14, 2008 |
| | ) | Time:    9:00 a.m. |
| _____ | ) | Court:   The Hon. Thomas J. Whelan |

19        COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

20 United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby

21 files its Response and Opposition to Defendant's Motions to Compel Specific Discovery and For

22 Leave to File Further Motions. This Response and Opposition is based upon the files and records

23 of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities.

24   / /

25   / /

26   / /

27   / /

28   / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I**

**STATEMENT OF FACTS**

On June 2, 2008 at approximately 12:00 p.m., the defendant entered the California Bank and Trust located at 525 B Street, Suite 100, San Diego, California.  He approached a bank teller and stated in substance to her, "Stay calm, this is a robbery.  Give me all your large bills from your top drawer."  The teller attempted to comply with the robber's demands, but realized that she did not have any large bills in her top drawer.  The teller explained this to the defendant who then stated, "Give me all your $20's and count them out to me like a regular customer."  The teller complied with the defendant's demands out of fear of putting her colleagues in danger if she didn't comply with his demands.

The teller immediately began counting $20 bills out to the defendant until the defendant told her in substance, "That's enough," and grabbed all the money the teller had counted and was holding.  The defendant then left the bank with $480.00.  Surveillance cameras inside the bank captured the defendant's image during the robbery.  The bank's deposits were insured by the Federal Deposit Insurance Corporation (FDIC) at the time of the robbery.

On June 5, 2008, the defendant went to San Diego Police Department Headquarters, and explained that he wanted to turn himself in for the June 2, 2008 robbery of the California Bank and Trust.

On June 5, 2008 at approximately 12:49 pm, the defendant was advised of his <u>Miranda</u> rights and agreed to waive his rights.  The defendant made the following statement: He stated that he went to the California Bank and Trust while wearing the same clothing that he was wearing during the interview.  He approached a teller at a middle window, leaned on the teller counter, and stated, "You're being robbed.  Don't signal anybody.  Give me the $100's and $50's from the top drawer."  The defendant believed that the teller was reaching for a dye pack after she opened her drawer and he told her, "No."  The teller then took out a loose stack of $20 bills, which she began counting out on the counter.  The defendant took the $20 bills from the

teller and left the bank.  The defendant then took a bus trip to San Francisco, California and back to San Diego, California.  During that trip, the defendant spent the $480 on food, the bus tickets, a hotel stay in Los Angeles, California, and a hotel stay in San Diego, California.  The defendant was shown a surveillance photograph from the bank on June 2, 2008, and confirmed that he was the person who was depicted in the photograph.

## II

### MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE

To date, the Government has provided the defendant with 55 pages of discovery including the complaint and statement of facts, report of investigation, surveillance video, and an audiotape that contains the advisal of <u>Miranda</u> rights to the defendant.

**(1)** **Defendant's Statements** – The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to the defendant the substance of the defendant's oral statements and defendant's written statements.  (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.)  The Government has produced all of the defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date.  If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided to Defendant.

**(2)** **Arrest Reports, Notes, and Dispatch Tapes** –  The Government has provided the defendant with all known reports related to the defendant's arrest in this case.  The Government is not aware of the existence of any dispatch tapes relevant to this case.  The Government will continue to comply with its obligation to provide to the defendant all reports subject to Rule 16.

The Government has no objection to the preservation of the agents' handwritten notes. <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).  However, the

Government objects to providing the defendant with a copy of the rough notes at this time.  The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to the defendant that is material to guilt or punishment.  If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to the defendant.

   **(3)  Brady Material** – The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to the defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by the defense.  Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).  "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

   Brady does not, however, mandate that the Government open all of its files for discovery.  See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d

1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over.  See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).    Brady does not require the United States "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply the defendant with exculpatory information of which it is aware."  United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(4)  Information That May Result in a Lower Sentence Under the Guidelines** – The Government has provided and will continue to provide the defendant with all Brady material that may result in mitigation of the defendant's sentence.  Nevertheless, the Government is not required to provide information bearing on the defendant' sentences until after the defendant' convictions or guilty pleas and prior to their sentencing dates.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the evidence is disclosed to the the defendant at a time when the disclosure remains in value").

**(5)  Defendant's Prior Record** – The Government has provided the defendant with a copy of his known prior criminal record and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D).  See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting the defendant's prior criminal record, the Government will provide those to the defendant.  In addition, the Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b).   Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined."  See United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(6)    404(b) Evidence** –  The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b).   Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined."  See United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(7)    Evidence Seized** – The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing the defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of the defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to the defendant.

**(8)    Request for Preservation of Evidence** – The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984).  To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the Defendant would be unable to obtain comparable evidence by other reasonably available means."  Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).   The Government will make every effort to preserve evidence it deems to be relevant and material to this case.  Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant.  See Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(9)    Henthorn Material** – The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the

criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

(**10**) **Tangible Objects** – The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of the defendant's defenses, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to the defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984). The defendant has further requested color copies of all photographs related to the case. Should the defense wish to see color copies, the Government will gladly set up a time for the defense to review the Government's color photographs. In addition, the Government will provide the defendant with color copies it intends to use at trial before trial.

(**11**) **Expert Witnesses** – The Government will comply with Rule 16(a)(1)(G) and provide the defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(**12**) **Impeachment Evidence** – As previously discussed, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

(**13**) **Evidence of Criminal Investigation of Any Government Witness** – As noted above, the Government objects to providing any evidence that a prospective witness is under

criminal investigation, but will provide the conviction record, if any, which could be used to impeach all witnesses the Government intends to call in its case-in-chief.

(14)  **Evidence of Bias or Motive to Lie** – The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

(15)  **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling** – The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

(16)  **Witness Addresses** – The Government has already provided the defendant with the reports containing the names, work addresses, and telephone numbers of the special agents involved in this case.  In its trial memorandum, the Government will provide the defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  The Government strenuously objects to providing the home addresses to the defendant.  In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial.  <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992); (<u>citing</u> <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996); <u>see</u> <u>also</u> <u>United States v. Bejasa</u>, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny the defendants access to government witnesses whose telephone numbers and addresses the government refused to provide because the defendant knew the identities of the government

witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

(17) **Name of Witnesses Favorable to the Defendant** – The Government is not aware of the names of any witnesses favorable to the defendant's case. If the Government discovers any witnesses favorable to the defendant, the names of such witnesses will be promptly provided.

(18) **Statements Relevant to the Defense –** The Government does not oppose disclosure of statements that are discoverable under Rule 16, Brady, or Giglio. However, the United States will not produce grand jury transcripts for this case unless a showing is made that would justify such a disclosure and the Court orders the United States to disclose that information.

(19) **Jencks Act Material** – Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

(20) **Giglio Information and Agreements Between the Government and witnesses**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan,

8 F.3d 1315, 1322-23 (9th Cir. 1993); <u>Benn v. Lambert</u>, 238 F.3d 1040, 1054-60 (9th Cir.

2002).   As stated above, the Government will provide any <u>Giglio</u> information in connection

with this case no later than two weeks prior to trial.

   **(21)  Informants and Cooperating Witnesses** – At this time, the Government is

unaware of a confidential source or informant involved in this case.  The Government must

generally disclose the identity of informants where (1) the informant is a material witness, or

(2) the informant's testimony is crucial to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53,

59 (1957).  If there is a confidential informant involved in this case, the Court may, in some

circumstances, be required to conduct an in-chambers inspection to determine whether

disclosure of the informant's identity is required under <u>Roviaro</u>.   <u>See</u> <u>United States v. Ramirez-

Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).  Should the Government become aware of an

information or confidential source being involved in this case, we will make it known to the

defendant.

   **(22) Report of Scientific Tests or Examinations** – The Government will provide the

defendant with the results of any scientific tests or examinations in this case in accordance with

Rule 16(F) should there be any, but none are anticipated at this time.

   **(23)  Residual Request** – The Government has already complied with the defendant's

residual request for prompt compliance with the defendant's discovery requests.

## III

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

   Defendant moves this Court for an order suppressing any statements because they were

allegedly made as a result of an invalid waiver of his rights pursuant to <u>Miranda</u> v. <u>Arizona</u>,

384 U.S. 436 (1966).  As explained further below, the United States does not believe that a

suppression hearing is necessary to prove admissibility; however, if the Court chooses to hold

an evidentiary hearing on Defendant's motion, the United States will prove that Defendant's

statements made while he was in custody, were made after he was properly advised of his

1
2
3

<u>Miranda</u> rights and he agreed to waive those rights.  Moreover, any evidence derived from Defendant's statements should not be suppressed because the evidence was properly obtained without any due process violation.

4
5

**1. Deny Motion Because Defendant Failed To Comply With The Local Rules**

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

This Court can and should deny Defendant's motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See <u>United States</u> v. <u>Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); <u>United States</u> v. <u>Wardlow</u>, 951 F.2d 1115 (9th Cir. 1991) (defendant forfeited right to evidentiary hearing on motion to suppress by not properly submitting declaration pursuant to similar local rule in Central District of California); <u>United States</u> v. <u>Moran- Garcia</u>, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

22
23
24
25
26
27

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in this case. Cf. <u>United States</u> v. <u>Howell</u>, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that

28

1    contested issues of fact exist." (citation omitted).  Defendant's motion to suppress statements

2    should be denied.

3          2.        Defendant's Post Miranda Statement were Voluntary

4          A statement made in response to custodial interrogation is admissible under Miranda v.

5    Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows

6    that the statement was made after an advisement of Miranda rights, and that the statement was

7    not elicited by improper coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986)

8    (preponderance of evidence standard governs voluntariness and Miranda determinations; valid

9    waiver of Miranda rights should not be found in the "absence of police overreaching").

10         A valid Miranda waiver depends on the totality of the circumstances, including  the

11   background, experience, and conduct of the  defendant.  North Carolina v. Butler, 441 U.S.

12   369, 374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a

13   full awareness of both the nature of the right being abandoned and the consequences of the

14   decision to abandon it."  Moran v. Burbine, 475 U.S. 412, 421 (1986). The government bears

15   the burden of establishing the existence of  a valid Miranda waiver.  North Carolina v. Butler,

16   441 U.S. at 373.  In assessing the validity of a defendant's Miranda waiver, the court should

17   analyze the totality of the circumstances surrounding the interrogation.  See Moran v. Burbine,

18   475 U.S. at 421.   Factors commonly considered include: (1) the defendant's age (see United

19   States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc)) (valid waiver because the 17-

20   year old defendant did not have trouble understanding questions, gave coherent answers, and

21   did not ask officers to notify parents); (2) the defendant's familiarity with the criminal justice

22   system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002)) (waiver valid in

23   part because defendant was familiar with the criminal justice system from past encounters); (3)

24   the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4

25   (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United

26   States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were

27   read to defendant twice and defendant signed a written waiver)); and (4) the time lapse between

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the reading of the <u>Miranda</u> warnings and the interrogation or confession (<u>see</u> <u>Guam v. Dela Pena</u>, 72 F.3d 767, 769-70 (9th Cir. 1995)) (valid waiver despite 15-hour delay between <u>Miranda</u> warnings and interview).

In this case, Defendant's post-arrest confessions should not be suppressed because they were preceded by a knowing, voluntary, and intelligent <u>Miranda</u> waiver.  Agents advised Defendant of his <u>Miranda</u> rights.  Defendant knowingly waived his <u>Miranda</u> rights and agreed to answer questions without the presence of an attorney.  Defendant is familiar with the criminal justice system as a result of his prior arrests and convictions.  He verbally stated that he understood his rights and was willing to be interviewed without an attorney present and he signed a waiver of rights expressing her decision to speak with agents.  Defendant's post-<u>Miranda</u> interview immediately followed his waiver of rights. This entire exchange was audiotaped.  There is no allegation or evidence of any physical or psychological coercion by any Government agents.  Based on the totality of the circumstances, Defendant's statements were the product of a knowing, intelligent, voluntary waiver of his <u>Miranda</u> rights and therefore should not be suppressed.

## IV

## <u>MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS</u>

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V

## <u>CONCLUSION</u>

For the foregoing reasons, the Government requests that the Court deny the defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: August 7, 2008

Respectfully submitted,

KAREN P. HEWITT

United States Attorney

/s/ *Caroline P. Han*

CAROLINE P. HAN
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR2040-W |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN MICHAEL VREELAND, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

    I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893. I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTION FOR DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

        **Frank Mangan**

        *Attorney for the defendant*

    I declare under penalty of perjury that the foregoing is true and correct.

        Executed on August 7, 2008.

                    /s/ *Caroline P. Han*

                    CAROLINE P. HAN